**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DIVENSON PETION,
    *Plaintiff*,

    v.                                                                Case No. 3:26-cv-590 (OAW)

CAPTAIN PAPOOSHA and DIRECTOR
OF SECURITY A. SANTIAGO,
    *Defendants.*

**INITIAL REVIEW ORDER**

The plaintiff, Divenson Petion, is a *pro se* sentenced inmate who is in the custody of the Department of Correction ("DOC") housed at Hartford Correctional Center ("HCC").[1]  ECF No. 1.   He brings this case under 42 U.S.C. § 1983 against two DOC employees: Captain Daniel Papoosha and Director of Security Antonio Santiago in their individual and official capacities.  He seeks both damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or against the officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  In accordance therewith, the court has reviewed all factual allegations in the complaint.

---

[1] The court may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).  The publicly available information on the Connecticut DOC website shows that Plaintiff was sentenced on September 14, 2020. *See* "Connecticut State Department of Correction: Inmate Information," available at https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num= 322706 (last visited June 8, 2026).

1

I.    **Allegations**[2]

The court does not include herein all of the allegations from the complaint, but summarizes them for context.

Plaintiff represents that DOC has identified him as a gang member, and that he has separation profiles with so many other inmates that it is difficult for DOC to find a place to house him.  At some point in the summer of 2025, Plaintiff alerted the appropriate authorities that he was no longer a gang member and wanted to participate in the "gang program"[3] at the MacDougall-Walker Correctional Institution ("Walker") due to his separation profiles with inmates and staff members at Corrigan Correctional Institution ("Corrigan").  Prison staff advised Plaintiff that it was up to Defendant Papoosha whether or not to grant the request.

Plaintiff suspected that Defendant Papoosha would be reluctant to grant his request because Plaintiff has an ongoing lawsuit against both Defendant Papoosha and Defendant Santiago.  As of September 20, 2025, Plaintiff had not received a response to his request, and so he wrote an inmate request to both Defendants, reiterating his desire to participate in programming at Walker.  In it, he explained that he had been "jumped" twice, that he was no longer a gang member, and that both Defendants were aware of his "issues" with inmates and staff members at Corrigan.  He noted that if something were to happen to him at Corrigan, they would be liable for failing to protect him and for deliberate indifference to his safety.

---

[2] All factual allegations are drawn from the complaint and are considered to be true.
[3] The court gathers that this is a kind of rehabilitation program through which gang members may be reintegrated into the general population in prison.

2

On September 25, 2025, Plaintiff was transferred to the gang unit at Corrigan despite the obvious risk of harm.  At Corrigan, he was placed in the same unit as some members of the rival gang Plaintiff and his friends attacked in March 2025.  Plaintiff asked why he was being housed in the unit with inmates with whom he had separation profiles and suggested it was a "set up."  Correctional staff allegedly expressed shock about Plaintiff's housing assignment, acknowledging that something likely would happen to him.

Plaintiff had numerous conversations with the Corrigan Warden and Corrigan Intelligence Captain and other Intelligence correctional staff to ask why he was placed in a unit housing inmates with whom he has separation profiles.  They all advised him that his placement was authorized by Defendant Papoosha and was out of their hands. Corrigan staff indicated that they were aware of Plaintiff's lawsuit against Defendants, and that they believed his placement was retaliatory.  Staff also informed Plaintiff that Defendant Papoosha had declined to place him in Protective Custody.  Some of the staff indicated that Defendant Papoosha would not send Plaintiff to Protective Custody until something happened in the gang unit.

Ten days after his placement at Corrigan, Plaintiff was assaulted.

On October 13, 2025, Plaintiff spoke about his situation with the Corrigan Deputy Warden and DOC Deputy Commissioner, who appeared to agree that Plaintiff should not be at Corrigan. The Deputy Commissioner stated that he disagreed with the actions of Defendant Papoosha and that he would intervene.

On October 19, 2025, Plaintiff filed a grievance against Defendants for deliberately putting him in harm's way.

3

II.    **DISCUSSION**

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all [Section] 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

The court construes the complaint to state claims for violations of the Eighth and First Amendents.

A.  **Personal Involvement**

In order to "hold a state official liable under [Secion] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . ." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (**"**It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)). "[T]here is no special rule for supervisory liability." *Tangreti*, 983 F.3d at 618. Instead, Plaintiff "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

4

Plaintiff has alleged facts about Defendant Papoosha's conduct relevant to his claims, but he has not alleged facts describing Defendant Santiago's conduct. Allegations that Plaintiff sent written inmate requests or grievances to Defendant Santiago are not sufficient to establish his personal involvement in a § 1983 constitutional claim. *See Brown v. Laino*, No. 24-CV-06677, 2025 WL 3228035, at *9 (S.D.N.Y. Nov. 19, 2025) ("[R]eceipt of letters or grievances, by itself, does not amount to personal involvement.") (quoting *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010)). Accordingly, the court must dismiss any claims for damages under 42 U.S.C. § 1983 against Director Santiago.

The court next considers whether Plaintiff has alleged any plausible claims against Defendant Papoosha.

### B. Eighth Amendment Deliberate Indifference to Health and Safety

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). Prison conditions that "involve the wanton and unnecessary infliction of pain" constitute cruel and unusual punishment under the Eighth Amendment, "which is applicable to the States through the Fourteenth Amendment . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981).

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate is required to demonstrate an objective element and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that posed a substantial risk of serious harm to his health or safety. *Farmer*, 511 U.S. at 834. To meet the

5

subjective element, an inmate must allege that the defendants possessed culpable intent; that is, that the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  *See Farmer*, 511 U.S. at 834, 837.  Thus, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."  *Id.* at 837.  An allegation of "deliberate indifference entails something more than mere negligence," though a plaintiff need not establish that the defendants intentionally caused a foreseeable harm.  *Id.* at 835.

Plaintiff alleges that he was transferred to the Corrigan gang unit, where he was housed with members of the rival gang he had fought a few months earlier.  For initial pleading purposes, Plaintiff's allegations suggest that his Corrigan placement exposed him to a serious risk of harm.  Plaintiff's allegations also support an inference that Defendant Papoosha was aware of the danger this housing assignment would pose, and that he disregarded that risk. Accordingly, Plaintiff may proceed on his Eighth Amendment claim of deliberate indifference against Defendant Papoosha in his individual capacity.

### C.    First Amendment Retaliation

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)) (internal quotation marks omitted).  The Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action

6

taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003)) (internal quotation marks omitted).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See Brandon* 938 F.3d at 40 ("The filing of prison grievances is a protected activity."). The first element therefore clearly is satisfied. The court also finds that Plaintiff sufficiently alleges that he suffered adverse action when he was placed in the gang unit at Corrigan, where he faced a serious risk of harm from other inmates and was, in fact, assaulted after only ten days. Finally, at this early stage in the proceeding, Plaintiff's allegations suggest that Defendant Papoosha placed him at Corrigan in retaliation for his ongoing lawsuit.

Accordingly, Plaintiff may proceed on his First Amendment retaliation claims against Defendant Papoosha in his individual capacity for further development of the record.

## C.   Official Capacity Claims

To the extent Plaintiff seeks monetary damages against Defendant Papoosha in his official capacity, such claims are barred by the Eleventh Amendment, as Defendant Papoosha is a state employee. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Plaintiff also seeks unspecified injunctive relief against Defendant Papoosha in his official capacity. Plaintiff may proceed against a defendant in their official capacity only to the extent that he seeks prospective relief for an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also In re Deposit Ins.*

*Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("[A] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law.") (quoting *Edelman v. Jordan*, 415 U.S. 651 (1974)).  But Plaintiff's request for injunctive relief is moot as he is now housed at  HCC. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (finding that an inmate's transfer from a particular facility generally moots claims for declaratory and injunctive relief against officials at that facility); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983 )("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").  Accordingly, any official capacity claims for injunctive relief are dismissed.

## IV.   ORDERS

For the foregoing reasons, the court enters the following orders:

The case may proceed on Plaintiff's individual capacity claims for damages against Captain Papoosha for an Eighth Amendment violation (deliberate indifference to his safety), and a First Amendment violation (retaliation).

All other claims are DISMISSED. Defendant Santiago is DISMISSED from this action, and the Clerk of Court is asked to please terminate him from the docket.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1) If Plaintiff wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed, in order to attempt to state a viable claim, he may file an amended complaint by August 7, 2026.  An amended complaint, if filed,

will completely replace the original complaint, and the court will not consider any allegations made in the original complaint in evaluating the amended complaint. The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein.

(2) Alternatively, if Plaintiff wishes to proceed on the claims against Defendant Papoosha, he may file a notice on the docket on or before by August 7, 2026, informing the court that he elects to proceed with service as to the claims that survived initial review.

If the court receives no response from Plaintiff by August 7, 2026, the court will presume that Plaintiff wishes to proceed on the Complaint as to the claims permitted to go forward in this order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**IT IS SO ORDERED** at Hartford, Connecticut, this 8th day of June, 2026.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE